## No. 745.

G. W. SENTELL & CO., IN LIQUIDATION, vs. MRS. M. G. KENNEDY AND HUSBAND.

Where a principal has dealt with a merchant through an agent acting under a written power of attorney, the merchant may prove by parol the correctness of his account, and any acknowledgment of its correctness, or any ratification of it by the principal, even if the agent has transgressed his mandate, or there are charges in the account which could not be legally enforced.

Where a factor's account is closed, stated, and rendered, at the end of the commercial year, and not objected to by his client, showing a balance in his favor composed of principal *and accrued interest*, on such balance interest may be charged in any subsequent accounts between the parties. Interest on such a balance is not compound interest.

Ratification by the principal of the unauthorized acts of an agent makes those acts binding on the principal.

A power of attorney sufficiently comprehensive to authorize the agent to manage a plantation, and disburse the proceeds of its crops, will justify the factor who sells the crops to pay out their proceeds on the orders of the agent.

APPEAL from the Eighteenth Judicial District Court, parish of Bossier. *Turner, J.*

*J. A. Snider*, for plaintiffs and appellees.

*J. D. Watkins* and *J. A. W. Lowry*, for defendants.

The opinion of the court was delivered by

MARR, J. G. W. Sentell & Co. were factors and commission merchants,

of New Orleans, and Mrs. Mattie Gilmer, now wife of P. J. Kennedy, lately widow of P. V. O'Neill, owned certain plantations in Bossier parish, where she resided.

O'Neill died in the fall of 1870; and his widow was the administratrix of his succession. On the first of December, 1870, she executed a writing, recorded in the office of the parish recorder of Bossier on the nineteenth of December, 1870, by which she appointed Samuel W. Vance, of the same parish, her agent, with large powers, to be exercised, in her absence as well as when she was present, with respect to her personal rights and property, as well as in reference to the succession of her deceased husband, "in the management of plantations and estate."

Under this power, Vance managed the entire business of his constituent up to the sixteenth of May, 1874. He shipped her crops to G. W. Sentell & Co., and through them he controlled and disposed of the proceeds, purchased supplies for plantation and family use, and made all the outlays and disbursements.

The account was kept by Sentell & Co. in the name of " Mrs. M. G. O'Neill," and it begins on the twenty-fifth of January, 1871. Detailed accounts were rendered on the first of June, 1871; twelfth of April, 1872; twenty-fourth of June, 1873; sixteenth of May, 1874; tenth of May, 1875, and twenty-first of February, 1876. The last account is in the name of "Mrs. M. G. Kennedy," and it closes with a balance against her of $3497 22, for which this suit was brought in September, 1876.

The debit side of these accounts consists of invoices of merchandise, supplies purchased, freights paid on them, cash advanced, numerous drafts, most of them at sight, commissions for advancing, and for accepting where time-drafts were drawn, and interest at eight per cent. The credit side consists of proceeds of sales of cotton, except certain items of cash, which will be more specially mentioned hereafter; and interest allowed at the same rate. Each of these accounts, except the first, shows a balance due by Mrs. O'Neill, and each balance is the first item, to the debit, in the succeeding account.

All the drafts were signed " Mrs. M. G. O'Neill, per S. W. Vance, agent," except one, signed by Mrs. O'Neill herself, in favor of Vance, of date seventh of April, 1871, for $698 47. One of the drafts was in favor of Head, tax-collector, dated fifteenth of July, 1873, for $959 71, for State and parish taxes due by Mrs. O'Neill, for 1872. The others are in favor of divers persons, for different amounts, with no indication of the purposes for which they were drawn.

The answer of defendant, assisted by her husband, was filed on the twenty-first of March, 1877; and the plea of prescription was filed on the same day. The former begins with a general denial; and this is followed by a special denial of the authority of Vance, " as agent, to sign notes,

or bills, or drafts, to bind *defendant*." She alleges that "her plantations made, and plaintiffs received annually from them, cotton worth largely more than the expenses;" that "the charge of interest, compounded, in said account is usurious and unlawful, and the same of the commissions charged;" and she shows that "the item of June 1, 1871, $8590 43, which plaintiffs charged to M. G. Gilmer, and placed to the credit of S. W. Vance, is unlawful and unauthorized, and other items, also."

The testimony in behalf of plaintiffs was taken before the answer was filed, except that of J. A. Snider, a member of the bar, which was given on the trial. The trial commenced on the same day that the answer was filed; and the judgment was in favor of plaintiffs for $4567 20, with five per cent interest from the sixteenth of May, 1874; and the additional sum of one hundred dollars, with like interest, from the twentieth of October, 1874, until paid, subject to a credit of $2559 40, of date twenty-fourth of February, 1875.

This judgment was arrived at by taking the balance, $4838 63, shown by the account ending sixteenth of May, 1874, when Vance's agency terminated, and adding invoice of twenty-sixth of July, 1873, with interest to the sixteenth of May, 1874, say $441 47, aggregating $5280 20. From this aggregate the commissions charged for advancing up to the sixteenth of May, 1874, $712 90, are deducted; and the additional sum, one hundred dollars, is for money paid to defendant in person by Sentell & Co. The credit is for proceeds of cotton, forty bales, shipped by defendant to Sentell & Co. after Vance's agency had ceased, sold twenty-fourth of February, 1875.

Defendant appealed; and plaintiffs, in their answer, pray that the judgment be so amended as to allow the $712 90 for commissions, rejected by the court below; and interest at eight per cent from the sixteenth of May, 1874, instead of five per. cent, as allowed.

Before proceeding to other matters, we shall consider certain items in the accounts rendered, which are not explained by the testimony, and which should and probably would have been explained, but for reasons which dispensed with such proof, as we shall see in the sequel.

In the account beginning twenty-fifth of January, ending first of June, 1871, there are but three items to the credit of defendant, one twenty-fifth of January, 1871, "by cash received, B. M. Johnson's check, $8912 60;" one February 6, "by cash received, Watt & Troy's check, $3492 39;" and one first of June, "by interest balance to your credit, $288 10." The last item to the debit of this account, which balances and closes it, is on the first of June, "to Dr. S. W. Vance, amount to your credit, placed to his account by his order, $8590 43."

In the account beginning ninth of June, 1871, brought down to twelfth of April, 1872, on the credit side is this entry, under date eleventh of

April, "by cash received of S. W. Vance, Sandidge & Co.'s check, $3689 56;" and in the account beginning twelfth of April, 1872, brought down to twenty-fourth of June, 1873, is this entry to credit, under date twenty-sixth May, 1873, "by Dr. S. W. Vance, this amount charged to him, and placed to your credit by his order, $6811 66." These two credits amount to the sum of $10,501 22; and interest is allowed on them from the eleventh of April, 1872, and twenty-sixth of May, 1873, respectively. The $8590 43, transferred to Vance's account on the first of June, 1871, with interest for two years at eight per cent, would amount to $9964 90, less, by $536 32, than the aggregate of the two sums placed to the credit of defendant by Vance, on the eleventh of April, 1872, and twenty-sixth of May, 1873.

The law does not require judges, in the absence of proof, to impute fraud or crime; and it is much more in accordance with the intimate relations existing between Dr. Vance and Mrs. O'Neill, to assume that he did not abuse his fiduciary powers, and betray her confidence by appropriating her money to his uses, without her consent, wrongfully; and that the sums placed by him to her credit left her no cause of complaint on that score.

Among the numerous letters written by Vance to Sentell & Co., filed in evidence, all of which are in the most friendly terms, and show great intimacy between the parties, is one of the tenth of March, 1871, in which Vance says: "Mrs. O'Neill wishes to buy half-interest in store, which I may sell to her." In the account beginning twelfth of April, 1872, under date seventeenth April, more than a year after this letter of the tenth of March, 1871, this entry appears to the debit: "To S. W. Vance & Co., one half their debit to us, $2600 20;" and again, under date twenty-seventh of May, 1873, this entry appears to the debit: "To S. W. Vance & Co., your one half of their indebtedness, incurred since April 16, 1872, $4206 71."

It is not difficult, certainly it is more satisfactory, more in harmony with the unquestioned facts established in this case, to assume, in the absence of proof to the contrary, that neither Sentell & Co. nor Vance intended or attempted to make Mrs. O'Neill, toward whom they both occupied fiduciary relations, pay one half of the debts of S. W. Vance & Co. without corresponding liability on her part; that it was true, as Vance wrote Sentell & Co. on the tenth of March, 1871, at a time not suspicious, casually, in the freedom of friendly correspondence, that Mrs. O'Neill wished to buy a half-interest in Vance's store; that Vance afterward acceded to her wish, as he said in his letter to Sentell & Co. he might do; that she actually did buy that interest; and that the sums just mentioned were properly charged to her for her share, one half of the indebtedness of the "store," from the date of the purchase.

We know that on plantations where large numbers of laborers are employed, the proprietors find it to their interest to establish "stores," so that the laborers will not be compelled to resort to the neighboring villages for such things as they may need from time to time; and the proprietors will not be annoyed by having strangers enforcing liens on the portions of the crops belonging to the laborers; and it was quite natural that Mrs. O'Neill, necessarily employing a large number of laborers, in the cultivation of her plantations, should desire to share, equally with her agent, in the benefits and convenience of such an establishment.

In this connection, it is proper to state, that Sentell proves that, in 1861, Dr. Vance was the agent of defendant. He says, speaking of Mrs. O'Neill: "I have know her very well for twenty-four or twenty-five years. In 1861 I was a member of the firm of Sentell & Prother, who did business with defendant, through her agent, Dr. Vance, under the same terms and rates as to interest and commissions as mentioned in the account now sued on." So that the relations between these parties were of long standing, and they must have been quite satisfactory, or they would not have been renewed in 1870, immediately after the death of defendant's husband, O'Neill.

Plaintiffs took the testimony of G. W. Sentell and of McLean, the book-keeper and cashier of G. W. Sentell & Co. They both prove the correctness of the accounts; and they annex to their depositions a large number of drafts and invoices as vouchers; and many letters written to Sentell & Co. by Vance, as agent for Mrs. O'Neill, and in reference to her business.

Defendant objected to this testimony, and to that of Vance and Zeigler, his clerk, and of J. A. Snider, a member of the bar, all the witnesses in behalf of plaintiffs, on grounds which are embodied in one bill of exceptions, which we copy, because it is easier than to condense it; and because it presents the entire defense to the demand:

"Defendants objected before the clerk (who took the depositions of Vance and Zeigler), and before crossing the interrogatories to Sentell and McLean, and objected at the trial to the introduction of the evidence of all said witnesses, and that of J. A. Snider, as also being parol and testimonial evidence, which could not be received to prove the mandate or power of attorney given by M. G. Gilmer to S. W. Vance, as the same was in writing, and the writing was the best evidence, which could not be contradicted, varied, or extended by parol. C. C. 2256.

"They objected to the plaintiffs' offer to introduce or to taking of said evidence, because plaintiffs sought, in the claims sued on, to force defendant to pay a large amount of usurious interest and compound interest; interest on interest, and commissions for use of money, which could not be proved by parol. But in law, no promise to pay any interest

beyond five per cent simple interest could be proved by any other evidence than written evidence, signed by the defendant.

"They further objected that where it took such evidence to bind defendant, no agency could be proved to bind her, except written evidence of the agency.

"That the drafts, and bills, and orders purporting to be signed by S. W. Vance, as agent, were without authority, were his debts; and no assumption of defendant to pay same could be proved by parol or other than written evidence, signed by defendant. Which objections were overruled by the court, and the evidence received, to show acknowledgments, both verbal and in writing, of acts by agent, and to show payments made by such agent, the correctness of which payments was recognized by the defendant, by writing, and to show, generally, the correctness of the acts of the agent."

First—The first part of this bill of exceptions is based upon a misapprehension of fact. The plaintiffs offered the written power of attorney; and they made no attempt to prove it otherwise than by this writing. The testimonial proof was offered to show what the agent did. The acts of an agent may be proved by any sort of testimony by which such acts can be established; and when they are proven, reference must be had to the written power itself, in order to determine, as a matter of law, whether these acts fall within its scope and design. The distinction between proof to establish a written power, and proof to show what the agent did in execution of that power, is too obvious to require discussion. The written power must be proven by the writing itself; the acts of the agent may be shown by any evidence by which the same acts, done by any individual, could be proven.

Second—The next objection is also founded on a misapprehension. The testimony was not offered to prove any agreement by defendant to pay compound interest, or usurious interest. The object was to prove the correctness of the account; and, certainly, the correctness of an account may be proven by showing that the items of which it is composed, debit and credit, are in accordance with the actual dealings between the parties. The fact that accounts were rendered frequently, during the course of the dealing, and that no objection was made by the debtor; that these accounts were running for several years, and were acknowledged to be correct by the debtor, and by his agent; that payments were made; would tend to prove that they were correctly stated. Parol evidence is admissible to prove such facts, to prove an account; and the fact that there are charges in the account which the debtor could not be legally compelled to pay, is no obstacle to proof that he acknowledged it to be correct, and promised to pay it, and did make payments at different times. The effect of such proofs, so far as any illegal charges in

the account are concerned, is one thing; the proof of the facts is another, and a wholly different thing.

Third—It is the uniform custom of the commission merchants of New Orleans, and every planter in Louisiana knows it, to charge and allow interest at eight per cent; to charge two and a half per cent commission for selling cotton; the same for buying supplies ordered; the same for advancing; and the same for accepting time-drafts. When the crop is sold, an account is rendered; and if any balance remains, due the merchant, if it is not paid, it is carried into the next account, treated as due at the date of the last account; and interest is charged on it from that date. This balance is made up of the principal, interest, and commissions, less proceeds of sales, and interest allowed; and this has been held to be no violation of article 1934 of the Civil Code, 1939 of the Revised Civil Code; Mylne's case, 4 An.; Compton's case, 5 An. Indeed, the text of this article of the Code is too plain to leave any doubt as to its meaning:

"Interest upon interest can not be recovered unless it be added to the principal, and, by another contract, made a new debt. No stipulation to that effect in the original contract is valid."

An agreement by the original contract, to pay interest upon interest is not valid. Interest upon interest may be recovered, where the interest, after it has become exigible, is capitalized, added to the principal, and by another contract made a new debt. And this is precisely what the merchants in New Orleans do, and what they have been doing, invariably, for years; and the planter, who accepts the accounts without objection, and continues to do business with the merchant from year to year assents to this, and binds himself as effectually as he could do by express promise, or verbal acknowledgment.

In point of fact, where the credits in the accounts suffice to pay the interest, this mode of keeping accounts can not be called the compounding of interest; because, so much of the aggregate debit as is composed of the interest, is paid by deducting the aggregate credit, composed in part of interest allowed, and is extinguished. The result is the same to the debtor, whether his credits are first applied to the payment of the interest which he owes, and the balance of the credit is applied to the remainder of the debit; because, no matter how the deduction is made, the balance which remains and is carried into the next account, will be precisely the same.

In the accounts of Mrs. O'Neill, the credits were largely in excess of the interest and commissions charged; and the objection based upon the hypothesis that interest was compounded, is not well founded in fact. But, as we have already said, the entire objection goes to the effect of the testimony, and not to its admissibility.

686      SUPREME COURT OF LOUISIANA,

Sentell & Co. vs. Mrs. M. G. Kennedy and Husband.

Fourth—The power of attorney authorized Vance for and in the name and stead of his constituent, "to demand, sue for, and collect, and receive all sums of money, of whatsoever nature, in all business transactions of my own and as administratrix of the estate of my late husband, P. V. O'Neill, and more especially the policy of life-insurance, to collect and receipt for same in my name and stead, and other demands of every kind, nature, and description, which are due and owing, or may be payable to me for my own account, or as acting for the interest of other parties or successions, to give good and sufficient receipts, acquittances, and discharges therefor; and to do each and every act for me and in my name and stead, during my absence from said parish and State heretofore named, or in my presence, that I could do if present and acting for myself, specially empowering my said attorney in fact to act for me as fully as I could in the management of plantations and estate, and all other business of whatsoever nature in any parish or State where my interest may exist or be."

It can not be questioned that this power was ample to enable Vance to employ overseers and laborers, and to pay their wages; to purchase necessary supplies; to ship the crops, and to control and receive the proceeds. The plantations were in Bossier, where Vance and Mrs. O'Neill lived. To obtain supplies, purchases must be made; and they were made, and Mrs. O'Neill knew they were made in New Orleans, and that they were made through plaintiffs, because the invoices, with the goods, for the plantation on which she lived, and for the use of her family, were sent to her. She knew that Vance could not afford to go to New Orleans to make the purchases in person, which were required from time to time, during the several years of his agency; and she must, therefore, have known that when such things were wanted, Vance would order them, for she did not order them; and that he could not do this otherwise than in writing. The receipt by her, and the use by her, of each invoice of goods ordered by Vance, was a ratification of his act in ordering them, which she has no power to recall.

Defendant knew that Sentell & Co. were her commission merchants, and that she had an account and funds with them; because, on the seventh of April, 1871, four months after the giving of the power, she drew on them, at sight, to the order of Vance. She must have known that Vance paid her taxes, and the expenses of her plantations, since she did not pay them herself; and, as the crops were shipped to Sentell & Co., money must be obtained from them to meet all the expenses of the plantations and of the family; and she expected Vance to get it, and to disburse it for her account. She must have known that the only practicable way of doing this, was by drawing on Sentell & Co. for the sums required, as they were required. These drafts were not intended to

bind her, they did not have the effect of binding her, as the maker of commercial paper, to circulate or to be discounted. There can be no doubt of the authority of Vance to have demanded and to have received, and to have given "good and sufficient receipts, acquittances, and discharges," for the entire proceeds of sales of her cotton, or any other funds of hers, in the possession of Sentell & Co. The drafts, bills, and orders were simply vouchers to Sentell & Co. to show what disposition they had made of defendant's money and property in their hands; and as Vance, if he had been in New Orleans, might have directed Sentell & Co. verbally, to pay the money in their hands to such persons as he might name, there can be no good reason why he might not, being in Bossier parish, give the same direction in writing. Of course, in either case, if he abused his power, and made an improper disposition of his constituent's money, he would be answerable to her.

The testimony was not offered to show any assumption, by defendant, of the debt of her agent, but the object was to show, by proof of her acts and acknowledgments, that the debt was her own; and that the agent bound her by his gestion of her business, his acts of administration of her affairs.

The testimony was properly admitted; and it makes this a very plain case. Vance proves the correctness of the accounts, and frequent recognitions of their correctness by Mrs. O'Neill. At the close of his agency there was a disagreement between him and Mrs. O'Neill as to the acts of his agency, J. A. Snider was the attorney of defendant, employed to settle this disagreement between her and Vance. He procured from plaintiffs the account sued on for the purpose of this settlement. Defendant, then Mrs. Kennedy, had the benefit of the advice and assistance of her husband, and of an experienced counselor. Her only complaint was as to the excessive interest and the commissions charged. Nothing was said about want of authority in Vance, nor was any complaint made as against plaintiffs. She complained of her agent; and that was the whole matter to be settled. Mr. Snider went through the accounts, and he made a statement showing the amount which she claimed to be excessive. The settlement was made on the eleventh May, 1875, witnessed by a written instrument, which shows the payment to her by Vance of $7099 06. Vance says "this was to satisfy her for all objections she made against contracts he contracted in her name, the account sued on in this action included. The account sued on in this case was made the basis of the final settlement made between witness and defendant."

Snider says: "The objections to the account sued on in this action included the sum specified in the act of settlement, the same being $7099 06. Witness made up, in this settlement, a full account of the excessive interest and commissions embraced in the account sued on."

Vance proves frequent recognitions, by defendant, of his acts as her agent; that he submitted to her, at different times, accounts of his transactions, which she acknowledged as correct. Vance gave up all claim for compensation for his services as agent, that is, in addition to the $7099 06, which he paid Mrs. Kennedy, he acknowledged payment in full for his services.

Sentell and McLean both prove that Mrs. Kennedy was in the office of Sentell & Co. in February, 1876; that Sentell showed the account to her, and asked her to examine it, " and to state her objections to it, if any she had. She examined it, and replied that the account was correct, and that she would pay it as soon as she could." She refused to close the account by note, as Sentell wished her to do, but she said if she made a good crop she would pay it all that year; if she did not make a full crop, she would pay according to the crop, from year to year, until the whole was liquidated.

The account rendered tenth May, 1875, shows that the entire proceeds of the forty bales of cotton shipped after Vance's agency terminated, were left in the hands of Sentell & Co. on account of her indebtedness; and that account and the one rendered twenty-first of February, 1876, show no charge to her debit except for interest accrued, and commissions.

It is impossible to admit that defendant was ignorant, at the time of this interview, of the particulars of the account, because this was some nine or ten months after the final settlement between her and Vance, when the account had been canvassed, thoroughly examined, and all her objections had been embodied in a detailed statement, which was made the basis of, and included in, the final settlement between her and her agent.

The question in this case was not as to any promise by parol to pay interest above five per cent, nor as to any obligation on her part to pay commissions for advances. The account rendered by Sentell & Co. showed a certain amount due by her. Conceding the authority of Vance, her agent, to bind her, she claimed of him such portions of that account, excessive interest and commissions, as she was not legally bound to pay. The settlement between her and Vance left nothing open to dispute between her and Sentell & Co. Having received from Vance the equivalent of the charges in the account of which she complained, if she should now be allowed a deduction for these charges, they would be paid to her twice: once, in the settlement with Vance, in May, 1875, and again by deducting them from the account. No judicial tribunal should countenance such a claim. Defendant is bound to pay the whole amount, balance shown by the account ending the sixteenth of May, 1874, and the invoice of twenty-sixth of July, 1873, with interest to the sixteenth of May, 1874,

aggregating $5280 20; and one hundred dollars, cash, twentieth of October, 1874, to be credited with $2559 40, proceeds of sale of forty bales of cotton, twenty-fourth of February, 1875.

It is not possible to make out a more complete case of ratification, by a principal of the acts of an agent, than is established by the proof in this case; and there was no necessity to go into the particulars of the accounts, because the result was acknowledged and admitted to be correct, except the interest and commissions, which were allowed, corrected, and paid by Vance.

Defendant called two witnesses only, neither of whom proved any thing in her favor. One of them said, on cross-examination, that few farmers on Red river or elsewhere made any money for the last six years; and that a great many of the farmers on Red river, "for years past, have been running their plantations on advances from their merchants."

The other witness says he knows that the Kingston place, on which Mrs. O'Neill lived, "if correctly managed, would have made a profit from 1871 to 1874." On cross-examination, he says "he does not believe the river planters in Bossier parish have made much money from the year 1871 to 1874, inclusive. Some of the planters have been running their plantations on advances made them by their merchants."

Mrs. Kennedy's acknowledgment and verbal promise to pay the account, do not bind her to pay eight per cent interest, or commissions, since the sixteenth of May, 1874. She is bound to pay the amount due on the sixteenth of May, 1874, not because of any promise to do so, but because the settlement with Vance imposes that obligation on her; and she has no right to claim any deduction on account of the interest and commissions charged up to the sixteenth of May, 1874, because she received the equivalent from Vance, in order that she might pay the whole amount of debt incurred during his agency, including interest and commissions, of which she complained, without loss or detriment to her.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be so amended as to read as follows: " That G. W. Sentell & Co., in liquidation, plaintiffs and appellees, do have and recover of Mrs. Mattie G. Kennedy, wife of P. J. Kennedy, defendant and appellant, $5280 20, with interest at the rate of five per cent per annum, from the sixteenth day of May, 1874, until paid, and the additional sum of one hundred dollars, with like interest, from the twentieth day of October, 1874, until paid, subject to a credit of $2559 40, of date twenty-fourth of February, 1875," and that as thus amended the said judgment be affirmed with costs.

Mr. Justice Egan took no part in this decision.